DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the decision of the Washington County Court of Common Pleas, Juvenile Division, which found that Appellant Mark E. Goudy, an adjudicated delinquent child, violated the terms of his probation. The court committed appellant to the temporary custody of the Washington County Juvenile Center for completion of its rehabilitation program.
 {¶ 2} Appellant argues that the trial court abused its discretion when it committed appellant to the Washington County Juvenile Center instead of returning him to the care and custody of his grandparents. For the following reasons, we disagree and affirm the well-reasoned judgment of the juvenile court.
 I. Proceedings Below {¶ 3} On January 24, 2000, a complaint was filed in the Washington County Juvenile Court alleging that Appellant, Mark E. Goudy, a juvenile, committed acts that, if committed by an adult, would constitute the following offenses: 1) failure to comply with an order or signal of a police officer, a third-degree felony in violation of R.C. 2921.331(B); and 2) unauthorized use of a motor vehicle, a first-degree misdemeanor in violation of R.C. 2913.03(A).
 {¶ 4} On March 27, 2000, the juvenile court held a hearing where appellant admitted to the failure to comply charge and the state dismissed the unauthorized use of a motor vehicle charge. Therefore, the court found appellant to be delinquent by reason of having violated R.C.2921.331(B) and (C)(5)(a)(ii), a third-degree felony. The court sentenced appellant to a suspended commitment to the Department of Youth Services (DYS), placed appellant on probation, ordered appellant to continue counseling, and required appellant to perform eighty hours of community service.
 {¶ 5} On August 18, 2000, appellant's probation officer filed a motion for further hearing and disposition concerning appellant. The probation officer alleged that appellant physically assaulted his mother, that he refused to follow instructions of his parents and teachers, that on several occasions appellant damaged the family car, and that appellant generally was "out of control." As a result, the court ordered appellant to undergo a psychological evaluation. Upon examining appellant, the psychologist recommended that appellant be placed in a structured environment. Therefore, on December 19, 2000, after appellant entered an admission to violating the terms of his probation, the court sentenced appellant to another suspended commitment to DYS and placed him in a program at the Hocking Valley Community Residential Center until he was discharged.
 {¶ 6} Appellant was eligible for release from Hocking Valley on November 13, 2001. On that date, the juvenile court held a hearing where it continued appellant's probation while in the physical custody of his grandparents, Tom and Carol Ryan. Appellant's suspended commitment to DYS, as well as his counseling, remained in effect.
 {¶ 7} On June 4, 2002, appellant's probation officer again filed a motion for further hearing and disposition, alleging that appellant had violated several terms of his probation. Specifically, the probation officer alleged that appellant routinely ignored the instructions of his teachers, parents, and grandparents; failed to complete assigned homework because "he just didn't want to;" and failed to get up in time for school on several occasions. Furthermore, the probation officer alleged that appellant was generally uncooperative and argumentative with his grandparents.
 {¶ 8} On July 23, 2002, the juvenile court held a hearing concerning the alleged violations of appellant's probation. He once again admitted to violating the terms of his probation. The court again sentenced appellant to a suspended term to DYS, but this time committed appellant to the temporary custody of the Washington County Juvenile Center for the completion of a rehabilitation program. The court determined that continued residence in appellant's own home, or that of his grandparents, would be contrary to appellant's best interest.
 II. The Appeal {¶ 9} Appellant timely filed this appeal and presents the following assignment of error for our review: "The trial court erred when it placed Mark Goudy in the temporary custody of the Washington County Juvenile Center."
 {¶ 10} Appellant argues that the trial court abused its discretion by ignoring the cumulative weight of the evidence at the appellant's dispositional hearing. We disagree.
 A. Standard of Review {¶ 11} Pursuant to R.C. 2152.19(A):
 {¶ 12} "(A) If a child is adjudicated a delinquent child, the court may make any of the following orders of disposition, in addition to any other disposition authorized or required by this chapter:
 {¶ 13} "(1) * * *
 {¶ 14} "(2) Commit the child to the temporary custody of any school, camp, institution, or other facility operated for the care of delinquent children by the county, by a district organized under section2152.41 or 2151.65 of the Revised Code, or by a private agency or organization, within or without the state, that is authorized and qualified to provide the care, treatment, or placement required."
 {¶ 15} This statute grants the authority for determination of the appropriate disposition of a delinquent child to the sound discretion of the juvenile court. A juvenile court's order of disposition will not be overturned absent the showing of an abuse of discretion. In re Samkas
(1992), 80 Ohio App.3d 240, 245, 608 N.E.2d 1172; In re Smith, Ross App. No. 01CA2599, 2001-Ohio-2475. The term "abuse of discretion" has been defined by the Supreme Court of Ohio as "more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157-158,404 N.E.2d 144.
 {¶ 16} In evaluating the discretion of a lower court, a reviewing court must be sagacious. The fact that an appellate court might reach a different conclusion than did the lower court does not establish an abuse of discretion. See Cox v. Fisher Fazio Foods, Inc. (1984),13 Ohio App.3d 336, 469 N.E.2d 1055. Rather, the reviewing court must demonstrate that the lower court's exercise of discretion was "not justified by, and clearly against, reason and the evidence; * * * such action must plainly appear to effect an injustice to the appellant."Sinclair v. Sinclair (1954), 98 Ohio App. 308, 129 N.E.2d 311. It is within these bounds that we will review the juvenile court's exercise of discretion, and determine if its disposition order was "unreasonable, arbitrary or unconscionable." Adams, supra.
 2. Review of Juvenile Court's Finding {¶ 17} During its dispositional hearing, the juvenile court had the opportunity to consider the testimony of several witnesses. Among those that testified were appellant, appellant's mother, appellant's grandmother, appellant's probation officer Melody Colling, and Brian Hesson, the supervisor of the Washington County Juvenile Center.
 {¶ 18} Appellant asserts that the testimony of Melody Colling and Brian Hesson support the contention that appellant should be returned to the custody of his grandparents. Both Colling and Hesson recommended that the appropriate placement for appellant was with his grandparents. Appellant further argues that he rectified the alleged probation violations: his homework has been good and his behavior had improved overall. Lastly, appellant argues that the juvenile court's disposition was based solely on the fact that appellant had failed to complete his "zone work" assigned by the juvenile center. From the record, this "zone work" amounted to a book report that appellant failed to complete because he thought he was returning home.
 {¶ 19} While it may be true that both Colling and Hesson were of the opinion that appellant should be placed with his grandparents, appellant cites no authority, nor did our research reveal any, in support of the argument that the juvenile court must adhere to such recommendations. Because the juvenile court "has the opportunity to see and hear the delinquent child, to assess the consequences of the child's delinquent behavior, and to evaluate all the circumstances involved," the statute authorizes it to issue orders of disposition appropriate to each child. In re Caldwell, 76 Ohio St.3d 156, 160-161, 1996-Ohio-410,666 N.E.2d 1367. Therefore, in its discretion, the juvenile court considers not only the delinquent act, but "the overall conduct and behavior of the juvenile, the juvenile's history, the remorse shown by the juvenile and other societal factors." Id. at 160. The juvenile court makes its determination keeping in mind the underlying purposes of the juvenile court system, which are aimed at the rehabilitation of the juvenile offender, so as to release the offender as a productive member of society.
 {¶ 20} While we are optimistic that appellant has made significant strides in improving his behavior with an eye toward becoming a productive member of society, we cannot find that the trial court was unreasonable or arbitrary by committing appellant to the Washington County Juvenile Center. The record establishes that appellant was adjudged a delinquent child as a result of committing acts that, if committed by an adult, would amount to a third-degree felony. Moreover, since his troubles first began, appellant's overall conduct and behavior suggest that he has not made the necessary adjustments in his attitude or conduct. He has demonstrated a history of violating the terms of his probation in various ways. At one time, he physically assaulted his mother. At other times, he simply refused to follow the instructions of those in authority.
 {¶ 21} Appellant argues that the trial court based its decision solely on the fact that appellant did not complete his "zone work." However, the record plainly evidences that this is not the case. While the trial court mentioned that it was concerned that appellant failed to complete his "zone work," by no means did the court exclusively rely on this fact in making its determination. Among the trial court's other concerns were appellant's behavior towards his parents, teachers, and grandparents, his repetitive violations of probation, and his general lack of remorse for his delinquent conduct. Moreover, it appears to us that the juvenile court was concerned most with appellant's overall rehabilitation and not just one incomplete book report.
 {¶ 22} Therefore, given the malefic behavior that appellant demonstrated on a regular basis, we believe that the trial court gave appellant every opportunity to improve his behavior before resorting to the disposition measures that were taken in this instance. The juvenile court could have previously committed appellant to DYS but resisted doing so on several occasions. Only after repeated violations did the trial court commit appellant to the Washington County Juvenile Center. This seems to us not only appropriate but also reasonable and just.
 {¶ 23} Therefore, we cannot find that the trial court abused its discretion by committing appellant to the Washington County Juvenile Center instead of placing him in the custody of his grandparents.
 III.Conclusion {¶ 24} Accordingly, we overrule appellant's sole Assignment of Error and affirm the judgment of the trial court.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the WASHINGTON COUNTY COURT OF COMMON PLEAS, JUVENILEDIVISION, to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEENPREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, IT IS TEMPORARILYCONTINUED FOR A PERIOD NOT TO EXCEED SIXTY DAYS UPON THE BAIL PREVIOUSLYPOSTED. The purpose of the continued stay is to allow appellant to file with the Supreme Court of Ohio an application for stay during the pendency of proceedings in that court.
If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of appellant to file a notice of appeal with the Supreme Court of Ohio within the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J., and Kline, J.: Concur in Judgment Only.